Mr. Taylor, when you're ready. May it please the court, my name is William Taylor. I'm here with my partners Michael Smith and Eric Delinsky for appellant. The instructions at issue here told the juror that they could convict Mr. Blankenship on count one without regard to his intent. They instructed on a standard which is the essential equivalent of negligence. You have only to look at the two different instructions given on count one and count two to see the point. The court said to the jury that willfulness is very different on count two than on count one. On count two it said willfully as used in count two means that the defendant must have acted with a bad purpose to disobey or disregard the law. That instruction came in the next breath after the instructions which are the subject of this appeal. We requested the same definition of willfulness on count one. The government objected and the court declined. Instead, she gave a special instruction just for count one on willfulness for supervisors never given before or since in any case. She gave the definition of willfulness in alternatives. The word or appears between each phrase or clause. The worst one says a person in supervisory authority willfully violates a mine safety standard if he fails to take actions necessary to comply with the mandatory mine safety and health regulations. He does not have to know that they are necessary to comply. It also said in a similar instruction that he commits a willful violation if he fails to perform an act required by the mine safety regulations. Although it does not say he needs to know that the act is required by the regulations. Your principle contention is focusing on that fourth part of the instruction, the one that deals with reckless disregard? No. With all due respect, our principle contention is that each of them is individually defective. The one which is the worst is the one I just read. You don't call that principle is the one that's worse from your words? I don't think any of them would survive, Brian, Your Honor. But it's very clear that when you look at the ones that I just described and the last one that you referred to, which permits a failure willfully to be derived from a failure to act in a reckless manner. Let me ask you about Brian and Safeco, the two Supreme Court cases. Yes, Your Honor. And then I want you to discuss them in light of the Fourth Circuit cases from here, the RSM case and the Americana case, the one that Judge Niemeyer wrote dealing with a gun dealership, and the use of the word willfulness in that context. Brian, of course, dealt with the instance when an individual actually was sent to jail, Safeco being a civil case. Correct. But there is some connectedness between the definition in the willful context of a civil case with a criminal case, clearly so, as Niemeyer said it in the RSM case here. So how do we get around that when we connect that? Or do you dispute that contention? Your Honor, I refer you particularly to the three cases called Bailey, Bostic, and Bradley, which are this Court's precedents on the definition of willfulness in a criminal case. They are cited in our brief. This Court has embraced the definition of willfulness in Brian. Why do we need to go with that when we have RSM that was more recently in 2006, Judge Niemeyer wrote that case, and he connected the Brian definition, which is a criminal definition from the criminal case. This is post-Brian, post-Safeco. And why do we need to go look at other cases when we have that direct precedent here dealing with it in that context, a gun dealer type situation? Well, of course, Brian was a case under the Firearms Act, as you know. And in that particular case, the defendant contended that he must have been shown to know the particular provision of the statute that he was violating. And the Court said that's not necessary. He only needs to know that his conduct is unlawful as a general matter. This Court has embraced that definition. The decision which you – In what case? Bailey, Bostic, Bradley, all of those. I want you to speak more specifically to the RSM case. It looks to me like it's more directly on point with what we're dealing with here. That footnote connects the Brian case, the statute there, which is the criminal statute, with the civil part of that action of RSM, and says that those definitions, civil and criminal, are consistent and that one informs the other. In other words, I read that footnote and it looks to me pretty clearly. He's saying they're basically interpreted the same. Your Honor, please, I don't think that Judge Niemeyer's decision would equate the definition of willfully in a criminal case with the definition of willfully in a civil case. It's quite clear from the Supreme Court's Safeco decision. Well, he says in the footnote, he says, we presume that Congress intended the same word used multiple times in a single act carry consistent meaning. And then he then talks about the Brian case, which is dealing with the criminal statute, which is 924A1D in the context of the civil statute 923E, and he says willful violations of the Gun Control Act can lead to either of these things, and in this context is the equation. I don't know how you get around that footnote. Well, Your Honor, if Safeco means anything, it means that in a criminal case, willfully requires more than merely knowing what you are doing. The Court says very clearly that willfully requires more. And although you can certainly say that – Safeco in itself, even though – was that a corporate-type defendant in that case? Yes, an insurance company. Repeated-type situations, and the question being is, well, maybe one or two times you'd be okay. But if you continue to do something over a period of time in the context of knowing what the consequences would be or should know, and in this instance we're talking about mind violations, and if you know that there's coal down here and being together, that you've got to have proper ventilations, you can have all kinds of problems in that situation. And if you do it one time and it says it's okay, fine. But here, just as in Safeco and Bryan, we're talking about repeated violations, and repeated violations in that context informs the definition of willfulness. To know the consequences of what you are doing may lead to these things. And even though you say that the term knowing is not really in the instruction, I mean, it depends on what you're using to modify it. All those instructions did have the word knowing in it. So I think to that extent, why is that not important? I mean, how is it that you can be in an instance where there are safety violations? We know they are there for a reason. They are not there so that the equipment runs better. It's not there so that you know that maybe the conditions at work would be better. But they are there to protect the individuals. And if you, in more than one instance, repeatedly ignore or either do something, either an act of commission or omission, that leads to the fact that these violations are being ignored, why is that not sufficient in light of the RSM case from this circuit, which is controlling precedent, and the Bryan case in the Safeco case? Well, we are not quibbling about sufficiency. What we are saying to you is that there was a mass of contrary evidence. This was not a one-sided case. The jury deliberated for two weeks and announced itself deadlocked twice and then acquitted on the majority of the government's charges. And there was a mass of evidence, which came from the government's own witnesses that Mr. Blankenship did not intend there to be violations, that he did not believe, in fact, that hiring more minors would reduce violations, and that he wanted them to do everything that he could to prevent them. So the point is the instruction, although you may be perfectly right that the evidence demonstrated violations in the minds, I might quibble with you about the extent to which there is any connection between those violations and Mr. Blankenship. The point is that there was a massive defense. We did not put on any evidence, but of course the defense evidence came from the government's witnesses, and it was powerful, if I may say so. The government's key witnesses both testified that they knew Mr. Blankenship did not want violations in the mind and that he – You said this is not a sufficiency case. Correct. If you were to quibble about the facts of it, you'd say it's not sufficiency, it's the law. Is the term plain indifference essentially the same thing as willfulness? I'm sorry. The term plain indifference. No. No, Your Honor, it's not. And why not in light of the American arms case from this circuit? Because the definition of willfulness, as this Court has held, requires an intent to do something that the defendant knows in a general way is unlawful. You find that in the three cases, all three of the cases which I have referred you to. And the question is what is the jury to be told? Is it to be told that it is not to consider whether Mr. Blankenship intended the violations? Is it not to consider whether he knew the consequences of his conduct? This instruction focused on the results, not on the intent. Well, in defining plain indifference in both the RASM case and the American arms case, which is precedent, American arms was definitely at the SACO, and the RASM case was after the Brine case. In both instances, those courts used the term plain indifference in reference to willfulness. These instructions don't even require plain indifference. They simply say you may convict him if you find that he did not do an act that was necessary to comply with mine. I thought the Court used the term deliberate indifference. In one or more instructions, yes, but the ones which we are bringing to the Court's attention do not contain that language. Remember, we quote three of the instructions. The one I just read to you has no cyan or standard whatsoever. It simply says knowingly. It includes the words knowingly, which means not by accident. But he can be convicted of willfully violating a mine safety regulation if he fails to do an act necessary to comply. And that's why this case turned into an argument about what the consequences of Mr. Blankenship's decisions were. The government's theory was that he didn't provide enough miners, he didn't spend enough money on miners, and that that was the equivalent of willfulness because they pointed to the Court's instructions and put up a big slide that said he had a duty to assure that there were no violations in his mine. And whether or not that's a truthful statement as a matter of law, we don't argue, but he took that and said, look at the Court's instructions. They tell you that if he doesn't do an act that's necessary to prevent violations, then he's acted willfully. And that's the problem that we have here. This was a hotly contested case. You're doing the three words that are not in the disjunctive. It says knowingly and purposefully and voluntarily do that, which is necessary. What is the purpose? Doesn't it require that you're not doing this because you have a purpose that's criminal? I believe, Your Honor, that doesn't inform the definition of willfully. It means not by accident. Right. Knowingly purposefully simply means not by accident. It means an intentional act. But that doesn't tell you what his intent is or what the standard the jury needs to apply to determine whether he's a conspirator. Do you think this is broad enough that if he didn't put gas in a truck, they needed the truck to prevent a safety violation? You're saying you could be convicted for that? No question about it. That's your reading of it? That's not only my reading. That's what the government argued. That is exactly how the government argued the case, that he made so much money and the company made so much money, they could have afforded a few more miners. And the defense was that more miners wouldn't make any difference, and that's what he believed, and therefore he has no intent to conspire to commit a violation. Of course, the jury didn't have to believe any of what you argued, right, just as it didn't have to believe any of what the government argued. That's no doubt true. I suppose the challenge for me, and I haven't heard you really address yet, is how do you reconcile what Judge Gregory just said, knowing, voluntary, not by accident, purposeful, together with deliberate indifference, together with the beyond a reasonable doubt, all of what the judge said to the jury, and you don't quibble with the evidence, you don't say that it's insufficient. So your argument comes all the way down, just distills to this notion that contrary to our precedence, you don't look at a single instruction in isolation, you look at the charge as a whole, and it just appears that you're violating that principle. The government doesn't argue that the instructions as a whole are sufficient. I'm sorry? The government doesn't argue that the instructions as a whole are sufficient. Indeed, the government does not address the instructions that we're discussing here. It doesn't have to argue that. That's the calculus we use in interpreting whether or not there's an harmful error. No question. But, Your Honor, you asked about the number of various instructions. The court told the jury that these were alternatives, alternative definitions of willfulness for count one. They're each preceded by the word or. So the jury is told in no uncertain terms that they can convict him if they find any one of these to be true. And you're right, the government court didn't. That's not how I read it. I'm not sure what you mean by or. The court said purposeful and voluntary and knowing. That wasn't in the conjunctive. May I read it, Your Honor? Sure. A person with supervisory authority at or over a man willfully fails to perform an act required by a mandatory safety or health standard if he knows that the act is not being performed and knowingly, purposefully, and voluntarily allows it to continue. Knowingly, purposefully, and voluntarily. That's all in the conjunctive. That allows the act. And it goes further, though. A person with supervisory authority at or over a man also willfully violates a mandatory mind, safety, or health standard if he knowingly, purposefully, and voluntarily takes actions and he knows will cause the standard to be violated. We don't complain about that one. But the next one, it says or. Or knowingly, purposefully, and voluntarily fails to take actions that are necessary to comply with the mandatory mind, safety, or health standard or if he knowingly, purposefully, and voluntarily takes action or fails to do so with reckless disregard. I'm about to use the word that in every one of those instructions. Why does that not indicate that knowing is modifying this, the rest of the sentence statement? Because knowingly does not equate with willfulness. But that in each of those instructions required the jury to conclude that the defendant knew the action would cause the standard violation. With all due respect, Your Honor, I hope to persuade you that's not the case. It indeed did not require the jury to conclude that he knew his act were causing the citation. It said. It did require the jury to determine that he recklessly disregarded a very high likelihood. Or that he voluntarily failed to take actions necessary. Necessary in whose view? Necessary. So it raised, it put the question to the jury whether what he did or didn't do was necessary rather than on what he intended. Well, but all of that is in the context of scores of violations that provided the factual background for this instruction. None of this happens in a vacuum. It's not like the jury walked into the courtroom and were given this instruction and nothing else. My point exactly. But this was not a one-sided case. I'm not sure what you mean by that. I mean that the defense evidence on this issue was hotly contested. There was evidence from the government's own witnesses that he did not intend for violations. And that witness was thoroughly impeached on redirect examination. Indeed not, Your Honor. He never, nor the other witness who also testified, he wasn't impeached as to that point. He was thoroughly impeached with respect to his testimony that purported to give the jury some insight into the defendant's intent. Whether it's a government witness or a defense witness or a little birdie on the shoulder of a lawyer, the jury's not required to credit any of that. Of course not. And it's entitled and expected to make its own independent determination. But it may credit it, and it may credit the testimony of the other witness, Mr. Ross, who also testified that he did not believe Mr. Blankenship wanted violations. So your argument comes down to if the instruction had been slightly different, you contend that this defense-favorable testimony as to the defendant's subjective intent would have created a reasonable doubt. I mean, that's essentially what it comes down to. Indeed, I'm sure that it did. The jury rejected the government's theory that counts two and three, that the statements there were false under a correct instruction. And remember, the government's theory as to why they were false is because they had proved that he was a criminal in count one. And the jury found him not guilty of those false statements. My point is, notwithstanding the evidence, which you have all obviously referred to, there was a vigorous defense on the issue of willfulness. And under any of this Court's precedents and others, if we are dealing with the question of whether it was harmless beyond a reasonable doubt, one simply cannot say that it was harmless to tell the jury that his intent didn't matter. I'm way into my ---- Well, you're answering questions of the Court, and you haven't been cut off. I just want to follow up in terms of when you said there was a defense. Was there a defense that he did something that was, in your defense, was innocuous and wasn't material and you wouldn't have known that this had any connection with a violation? The argument in the case came down to he should have hired more minors. If he had hired more minors, there would have been fewer citations. The government never said how many fewer or how many more minors, by the way. But that was the government's point. He made decisions based upon the budget and quotas that caused violations. And our defense ---- And a juror would have to believe that he knew that those additional people, they were necessary, right? Yes. Well, if he knew they were necessary, he purposefully and liberally and voluntarily did that, why is that not a willful conclusion? Well, the jury, he did not believe they were necessary. I know. That's your defense that he didn't, but apparently they must have concluded otherwise. But you do. The point is they had to find that they were necessary, not just any. So there goes the materiality of the act. But that, with all due respect, Your Honor, is the antithesis of willfulness. Necessary focuses the jury on a factual question, whether what he did or didn't do had a causal relationship to anything. And the question in a conspiracy to commit willful violations of mine safety regulations is, what did he intend? What is his state of mind as to mens rea? And to say that on count two, ladies and gentlemen, I instruct you that he knows his conduct has to be unlawful, as opposed to the definition on count one, where it puts the contrast in the willfulness standard in its most stark terms. The jury could not have misunderstood that it did not have to find that he intended to do anything that was, in a general sense, illegal, but rather it only had to find that he did or didn't do an act which was necessary to prevent violation, that he did not have to know it was necessary. May it please the Court, should I? No. I think I'm already through my rebuttal time. But I would appreciate it if the Court would grant me some rebuttal. I also have a few more points I'd like to make. Well, as to your first question, yes, your rebuttal time is reserved in full. But as to the second, your time is up. Thank you, Your Honor. Mr. Ruby? May it please the Court, Your Honor, Steve Ruby for the United States. I'm going to begin, Your Honor, in a place where I didn't expect to, because this is not a case about sufficiency, and so I didn't expect to cover sufficiency of the evidence. But I do think it's in this place. Pardon, Your Honor? Begin in this place. Yes, Your Honor. It seems to have indicated that the Court essentially told the jury that defendant's intent did not matter. It couldn't be further from the truth, Your Honor. The defense strategy on the willfulness instruction depends entirely, as Judge Davis observed, on ripping not just sentences,  looking at those fragments of sentences, without the benefit of the full instruction that the jury heard. And what the jury heard was an instruction, and this is at page 1555 and 1556 of the Joint Appendix, the Court gave a willfulness instruction with respect to Count 1, and specifically an instruction on willfulness under the Mine Act. There's a separate instruction on willfulness for conspiracy purposes that we touched on in a 28J letter earlier this week that I'll come to later, but the Court gave on willfulness under the Mine Act a five-paragraph instruction, and each paragraph in the instruction serves a separate function. The first paragraph, which is at page 1555, says that the term willfully with respect to Count 1, a violation of a safety standard, is done willfully if it is done knowingly, purposefully, and voluntarily, either in intentional disobedience of the standard or in reckless disregard of its requirements. That's the mental state that, according to these jury instructions, the defendant must have had with respect to the wrongfulness of his conduct. The defendant could only be convicted, or an individual could only be convicted. Is this a whole new concept? I mean, I didn't hear the Jones case being mentioned yet in this context, but is this new, what we're dealing with here? Not at all. This definition of willfulness? Not at all, Your Honor. This is the definition of willfulness that has been accepted in this circuit since 1984. In the Jones case, the only other circuit that we're aware of that is considered willfulness in the context of the Mine Act is the Sixth Circuit, which used the same definition in the consolidation coal case, which is what the Jones case reviewed and endorsed. And that definition has been found to be valid in the Sixth Circuit as recently as 2012 in a district court there that has handled a case like this. There's nothing new about the definition that the district court used here, including the component of it. Did they claim anything from the more recent cases here of the RSM and American Arms? We didn't. I'm familiar with those cases, Your Honor. We didn't cite them, and the reason we didn't cite them is because I felt like there were. We felt like there were criminal cases that made the point equally well. I agree with the point that you made in the earlier argument and defense counsel's argument, Judge Wim, which is that the RSM case says two things. Number one, it refused the idea that defense counsel has pressed in their brief that civil and criminal willfulness standards can't be the same, and we cited for the same proposition the Maloosh case from this court in 1988 or 1989, I believe, which held that civil and criminal willfulness standards within the context of a particular statutory scheme can, in fact, be the same. The other thing that RSM says that's significant is that willful action means, and I believe I'm correct about this, I don't have RSM in front of me, but RSM says that willful action is distinguished from accidental action. In other words, it's action that is undertaken knowingly and purposefully and voluntarily, which is what the instructions in this case require. The third thing that's significant about RSM and about American Arms, even though those were civil cases, is that they make the point, which the courts all already observed, that one way that a jury can find willfulness is from repeated instances of the same violative conduct over and over and over again, and that, I think, is at least implicit in the instructions here, and that is a point of law that is confirmed, endorsed, held by this court in both RSM and American Arms. The context of the civil versus the criminal, is that significant here? I'm thinking in particular, I think the cases that are coming to mind now are dealing with the firearm dealer type situation, which you know, if you don't comply in certain ways, things will happen, or at least the allegation is there. And that seems to be the type of case that can inform more factually how willfully can be used even in a criminal context or a civil context when you're dealing with corporations or others in this process. And is this an evolving area of the law? Is, Your Honor, it's the question whether willfulness is an evolving area of the law? Yes. Your Honor, I don't believe, and I'll answer the question this way, which is that although there have been decisions, certainly the Bryan decision and the Safeco decision that the defense cites, those are decisions in which the law of willfulness has been considered and addressed. What the courts in those cases have said, and what this court has said consistently, including in RSM and in American Arms, is that willfulness is a word of many meanings, and its construction is influenced by the context in which it is used. Every court, I have never seen, and the defense certainly doesn't cite, a court take the position that willfulness has a one-size-fits-all definition. That's exactly right, isn't it? Because the category, to use as a category, criminal cases, is too broad a category when you're talking about willfulness. That's absolutely right, Your Honor. Willfulness actually draws its meaning within the broad category of criminal cases and instructions in criminal cases from factual and legal context. And the thesis, the central thesis of the defense argument, is that Bryan and Safeco said that in no context can the definition of willfulness ever include a component of reckless disregard, and that's just not right. Bryan and Safeco begin their discussions of willfulness by reiterating the observation that willfulness, again, is a word of many meanings and it depends on its context, and neither of those cases said that reckless disregard can't be a proper component of willfulness. The classic example that's usually given is willful failure to file income tax returns. You could never convict, nor would any judge I think ever instruct, on reckless disregard when it comes to failure to file income tax returns. That requires an affirmative, knowing, purposeful failure to do that which the law requires. This case is an omissions case, and the context is very different. And that's the point, Your Honor, that the Supreme Court makes in Bryan. If you look at what Bryan actually said, Bryan is a case in which the question was whether the willfulness standard that applied to the firearms offense that was at issue there was the heightened willfulness standard that you get in certain tax cases and certain other financial regulation cases like RATSLAF, the RATSLAF standard, or was a lower, more ordinary willfulness standard. And in that case, actually, the Supreme Court found that the willfulness, that the ordinary, that the willfulness standard that applied was not the heightened willfulness standard that you get in a tax case like Your Honor has referred to. But there's nothing in Bryan, and there's nothing in Safeco that said that reckless disregard isn't a proper component of willfulness in appropriate context. And there's a long series of court decisions dating at least back to the 1940s with the Screws decision from the Supreme Court that have used reckless disregard as a component of willfulness instructions in criminal cases in appropriate context. That includes decisions from almost every circuit, including this circuit, and it includes decisions that post-date Bryan and that post-date Safeco, the only circuits that I'm aware of, and the defense, I don't think, was able to contradict this in the reply brief. The only circuits that I'm aware of that have considered the argument that the defense makes, that Bryan and Safeco eliminate reckless disregard as a component of any willfulness instruction, have expressly found that that argument fails. That's the London decision and the Turalo decision that are cited in our brief, and then the Seventh Circuit decision that rejected the argument that Safeco eliminates reckless disregard as a component of willfulness. Mr. Rubin, you note that the appellate strips away, as you call it, fragmenting words, but turning to those fragments in paragraph 3, would you concede, though, that that part they talk about, if that was the only part of willfulness, that that's an improper, it's a misfocus? I think the instruction would be weaker. I think that, I think, though, that it would be improper in terms of willfulness. Because the striking part of that, and the biggest part is, the recurring, in the first two paragraphs, he knows. He knows. But here, even though it's in the conjunctive, knowingly, purposefully, and voluntarily fails to take action that are necessary to comply with. Does that get back to the, you know, didn't put gas in the truck and the truck is necessary to prevent, why wouldn't that be a violation? If I could take this, and I think that the analysis is a little bit different on this for each of these three paragraphs. There are five paragraphs in the Mine Act willfulness instruction that the trial court gave. Read the page again, please. It's 1556. Yes, Your Honor, in the JA. And the first two are actually on 1555, but the last three are the ones we're focused on right now with Judge Gregory's question. Right. The first one, which begins with stated differently, says that a person willfully violates a mandatory health and safety standard if he knowingly, purposefully, and voluntarily commits an act forbidden by the standards. And my analysis of that, Your Honor, is that certainly it is stronger, that instruction is stronger when you consider it in the context of the first paragraph. And it's stronger when you consider it in the context of the conspiracy instruction, which requires specific intent to do something that the law forbids. But even if you take this standing alone, it is reasonable to read the word knowingly to mean, to modify, as I think Judge Wynn may have mentioned, the rest of the sentence, that he knowingly commits an act forbidden by the standards. And as the court's aware, although the legal correctness or the correctness of the law stated in a jury instruction is reviewed for abuse of discretion, or reviewed de novo, pardon, a court's decision or a court's choice on how to phrase a jury instruction, so long as the law is accurately stated, is reviewed for abuse of discretion. In the next paragraph, which begins with a person with supervisory authority, again, the emphasis here is on an act required by a mandatory safety or health standard. And then it says if he knows that the act. And the reasonable reading of that, even standing alone, and again, this instruction is stronger when read in context, I think clearly correct when read in context. But even standing alone, this refers to the act, which is a reference back to the clause earlier in the sentence, which talks about an act required by a mandatory safety or health standard. And in the last of these three paragraphs, the one that begins, the long paragraph that begins with a person with supervisory authority, this one I think is fairly clear. Here, this one requires that the, even standing alone, that the defendant knowingly, purposefully, and voluntarily takes actions that he knows will cause a standard to be violated. And later in the paragraph says, knowingly, purposefully, and voluntarily takes action or fails to do so with reckless disregard for whether that action or failure to act will cause a violation. So I think, Your Honor. Why are you skipping over my question? I asked you about to why you skipped over it, didn't I? About the fails. Voluntarily fails to take action. Your Honor, I think that if you. Or. It starts or. I think that even, I guess my response is, Your Honor, that even if you take, even if you just look at that paragraph, divorced from all the rest of the instructions, which I know the Court understands is ultimately not the right analysis. But for purposes of Your Honor's question, I think that paragraph, at least twice, correctly instructs the jury that there has to be knowledge that a standard is going to be violated. And so I think that even the fragment, I think the correct reading of the paragraph is that even the fragment Your Honor mentions refers back to that instruction, that there has to be knowledge that the act is going to cause a standard to be violated. So now, where do you get the antecedent for takes actions? You said, what's the antecedent to takes actions? You go back to every time they mention action, forbidden, mandatory, what? You said you have to go back. You have to have some kind of antecedent, I guess, to make some logical connection to what you just argued to the Court. I think, Your Honor, if the phrase, and correct me if I'm in the wrong place, but if the phrase that you're looking at, Judge, is knowingly, purposefully, and voluntarily fails to take actions that are necessary to comply with a mandatory mind, safety, or health standard? Yes. I think that in this one, this clause, I don't think it's an issue of antecedents. I think it's an issue of reading, at least as we read it, and as I believe the trial court read it, the words knowingly, purposefully, and voluntarily modify not just actions, but they modify necessary to comply. In other words, there is knowledge on the part of the defendant that the actions are necessary to comply, and that the purpose and the voluntariness of the defendant's actions are also directed to that necessity of compliance. It's an antecedent clause preceded by that. When you look at knowingly, purposefully, voluntarily fails to apply that are necessary to comply. It does seem to modify, knowingly modifies the necessary to comply. I don't know how else you read it. That's the way we read the instruction, and I believe that that's the way, given all the context that the trial court supplied. I believe that's the only way to view the trial court's understanding of the instruction, and I think that is certainly the most natural reading of it. The action might be necessary for compliance, but do you have to know that? Or do you just have to know the action that you took? There's a difference between what you did, you voluntarily, knowingly did so, but it's another to say do you have to know it was necessary for compliance? That's the question. Our view, Your Honor, is that I think I understand the question. Our view is that the words knowingly, purposefully, and voluntarily modify not just the action, but the necessity of compliance. In other words, that this instruction would require the jury to find that the defendant knew that the action was necessary to comply with a mandatory modern safety or health standard, not just that the action was being performed. Your Honor, if I could, to return to the subject of context and the necessity of reading the instructions as a whole, on the preceding page, I direct the Court's attention, or two pages before, on Joint Appendix page 1554, the instruction that the Court gave on conspiracy. And it's important to point out that what the defendant was convicted of here was conspiracy to violate modern safety standards, not of an underlying substantive offense. The conspiracy instruction that the Court gave is that to act willfully in a conspiracy means to act voluntarily and intentionally and with specific intent to do something the law forbids, or with specific intent to fail to do something the law requires to be done. I don't think even the defense disputes that that instruction was correct. And the significance of that instruction is that because the defendant was convicted here of conspiracy, it was impossible for the jury, and we presume that the jury follows the instructions that it's given, it was impossible for the jury to convict the defendant without finding that he had specific intent to do something the law forbids, or that he had specific intent to fail to do something that the law requires to be done. And so the complaint that the defense has in this portion of its appeal is that the jury could have convicted the defendant without any finding that he knew that the actions that he was taking or that others in the conspiracy were taking were wrongful. This conspiracy instruction, even if the Court doesn't reach the instruction on willfulness under the Mine Act a little bit later, this conspiracy instruction rules out any possibility that the jury convicted the defendant without finding that he had the specific intent to do something that the law forbids. That's what kind of confuses me, frankly. It couldn't be more clear, the basis for the conspiracy conviction. So we've spent all this time, quite appropriately, exploring the sort of subsidiary instruction on the underlying substantive offense. When, as you just pointed out, the conspiracy conviction, fairly read, requires everything that would have been necessary to convict on the substantive offense. I think I understand your question, Your Honor. What am I missing here? I'm missing something. Our position is that there are multiple bases on which the Court could affirm the willfulness instruction. I don't think you're missing anything, Your Honor. I think you're right that the conspiracy instruction, standing alone, is enough to resolve the issue. And the Court doesn't even need to reach the question of the, because this ensures that the jury found the necessary mens rea, that the defendant had the necessary mens rea, the Court doesn't even need to reach the instruction on 1555 and 1556. But did the jury have to find beyond a reasonable doubt that he personally, that is, Mr. Blankenship, personally and individually intended to violate the Mine Safety Act for this conviction to stand? The jury would have had to find that the defendant joined into, as part of the conspiracy conviction, joined into an agreement. That somebody who's a part of the conspiracy intended to violate the mine act. The jury doesn't have to find that the defendant himself intended to commit any act personally. The acts can be committed by others. The acts that violate the Mine Act, which would be judged under the Mine Act willfulness instruction over 1555 and 1556, those had to be committed by somebody with intent. And those omissions could have been committed, in quotes, by somebody. With intent. But they didn't have to be committed by the defendant. The intent that the defendant had to have was to enter into an agreement or understanding with specific intent to do something the law forbids, which the Court told the jury. Which somebody would do. Which somebody would then carry out. But it didn't have to be him. And so. Was that requiring an act of furtherance on his part? Not on his part. On the part of someone. Just totally agree to do, just totally agree. There has to be, Your Honor, evidence of his entering into the agreement. But the overt acts in furtherance of the agreement can be committed by others. The defendant has to do something to manifest his entering into the agreement. And the defense contention that this case was all about whether they should have hired a few more miners is completely incorrect. As the Court has seen in the briefs, I'm sure this was a defendant who ordered his mines explicitly in writing to do nothing but run coal, even if somebody told them to do other things that were necessary to comply with the safety laws. He ordered the President, who was in charge of the Upper Big Branch mine, in writing not to worry about mine ventilation. We'll worry about that at another time when mine ventilation is one of the core areas that's governed by the mine safety laws. He directed, and again, the sites to all this are in the brief, he directed the President of the Upper Big Branch mine to restart a section of the mine that didn't have a legal ventilation plan at the time. And then when the President resisted because it wasn't lawful, the evidence was that the defendant told him to stop letting MSHA, the federal mine regulator, run his mines. The defendant was confronted both in person and in writing by a senior mine safety official at Massey who told him that the company's mines were rampantly violating the law. And the defendant's response, and this is in the record in a telephone conversation that the defendant himself recorded, was that this is a document that we need to bury. This would be a terrible document to have come out in discovery. So the idea that the defense is advancing that this is a case at the margin about whether or not to hire a few more miners here or there is completely inconsistent with the evidence. I know it's not a sufficiency case, but that was a point that the defense raised that I felt had to be corrected. Quickly, two infants instruction. That was not a good instruction, was it? Your Honor, I think that certainly there are a number of courts. You didn't ask for it. We did not ask for it. That was an instruction that the court proposed. It is an instruction that a number of courts have said is disfavored. However, there are other courts that have made the point correctly that that instruction. You're not going to defend it before us, do you? Our position, Your Honor, is that the instruction is not incorrect. But it's correctly disfavored. Your Honor, I'll put it this way. If this court followed suit with the other courts that have considered the instruction and found that it may be correct and it doesn't require a conviction to be vacated, but that it might not be the best idea to use it going forward, I wouldn't disagree strongly with that. Thank you, counsel. Thank you, Your Honor. Mr. Taylor. May it please the Court. The two infants instruction is not just a bad idea. It's contrary to this Court's continued admonition against trying to define reasonable doubt. And I must say that if it's not reversible error in this case, it's not reversible error in any case. Has it been? Has it been reversible error in any case? The United States v. Hughes in the Second Circuit, it was part of the reason for the reversal. There were two reasons for the reversal. But if the courts are going to continue to instruct judges not to do it but not impose any consequences for ignoring that instruction, then we simply have a situation in which it's not going to be followed. With all due respect, Your Honor, I wanted to address two or three of the things that came up in Mr. Ruby's questioning by the Court. First of all, the conspiracy, the issue of whether the conspiracy instructions save any errors in the instructions on willfulness. Your Honor, the conspiracy instruction simply tells the jurors that a defendant must intend to engage in an agreement which is a violation of the law. If the court then tells the jury, gives the jury an erroneous definition of what the law is, then the conspiracy instruction really has no application whatsoever. This Court's been very clear that if you have two instructions which are diametrically inconsistent, one is right and one is wrong, then you have to reverse because you can't tell which one the jury followed. Now, the government hasn't, of course, argued until the 28J letter that the conspiracy instruction has any impact on the result in this case. With all due respect, we should have been given some opportunity to address that. But I want to go back to the fundamental question we were discussing when I was here in the main portion of my argument. Brian says knowingly and willfully are two different things. Knowingly does not mean that the defendant knows his conduct is unlawful. That is the willful part. Brian could not be more explicit on that. There may be situations in which knowingly and willfully are both applicable, but knowingly doesn't mean an intent to do something wrong. It means that it's not an accident. One is not forced against his will to do something. And I will say I agree with you on that basic proposition of law. So how does that help you? Because if you look at page 31 when you have an opportunity where we cite the three instructions, we print them back to back, and the first one requires a person, it says a person with supervisory authority, et cetera, willfully fails to perform an act required by safety standards if he knows that the act is not being performed. That says if he knows. The words in that instruction are if he knows. The next instruction, the very next instruction, which is preceded by an or, says that a person with supervisory authority willfully violates a mandatory amount of safety if he knowingly takes an action that he knows will cause a standard to be violated. Same note. The third is that he knowingly, purposely fails to take actions that are necessary, completely omits the he knows. That's the point. The government conceded in the final argument that it may be true that Mr. Blankenship did not want to have violations. Government witnesses testified that he did not want to have violations. But under this instruction, the jury could convict him even if it believed he did not want violations and did a lot of things to prevent them if he failed to take an action that's necessary. In other words, his intent could be that he did not want to, he didn't engage in any conspiracy. He didn't authorize anybody to engage in any conspiracy. That was a defense. But if he didn't put the gas in the truck and that caused a violation, then he had committed a willful violation. That's what the government argued, and that's what the court told the jury with all due respect. So there's no mistake, there's no argument that the jury wasn't told that his conduct as a manager and his budgeting decisions and his quota decisions were his crime. That was his crime. But the defense put powerful evidence before the jury that every executive has to pay attention to the budget and to the quotas. The question is, did he knowingly commit an act that he knew was contrary to law? Did he intend there to be violations of the citations? And as I said, we're not telling you that the case wasn't tried and argued with two opposing versions of that basic proposition. But we got instructed out of it because the court instructed the jury that his intent didn't matter. As long as he was negligent and failed to take an act necessary, then he had committed a willful violation. Thank you, Your Honor. Thank you. We'll come down to Greek Council, then proceed to our next case.
judges: Roger L. Gregory, James A. Wynn Jr., Andre M. Davis